1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7           FOR THE NORTHERN DISTRICT OF Cp-ALIFORNIA

8

9    DAEWOO ELECTRONICS AMERICA INC.,          No. C 13-1247 JSW

10              Plaintiff,                      **ORDER GRANTING IN PART
                                                AND DENYING IN PART
11      v.                                      DEFENDANT'S MOTION TO
                                                DISMISS**
12   OPTA CORPORATION, ET AL.,

13              Defendants.
     _____/

14

15          Now before the court is Defendant Opta Corporation's ("Opta") motion to dismiss the

16   First Amended Complaint of Plaintiff Daewoo Electronics America, Inc. ("Daewoo").  The

17   Court finds the motion fully briefed, ripe for decision, and suitable for resolution without oral

18   argument.  *See* N.D. Civ. L.R. 7-1(b).  Accordingly, the Court hereby VACATES the hearing

19   set for August 9, 2013.  Having considered the parties' papers and the relevant legal authority,

20   the Court GRANTS IN PART and DENIES IN PART Opta's motion to dismiss.[1]

21                              **BACKGROUND**

22          In this action, Daewoo, an electronics manufacturer, seeks to recover damages of

23   approximately $7,775,000 in unpaid invoices from DVD and VHS products Daewoo sold to

24   GoVideo, a third-party electronics retailer.  (First Amended Complaint ("FAC") at 15.)

25          On November 2005, GoVideo filed a Complaint against Daewoo in the United States

26   District Court for the District of New Jersey alleging, *inter alia*, breach of contract and breach

27   of duty of good faith and fair dealing.  In response, Daewoo asserted a counterclaim against

28

---

[1]  Although the Court acknowledges that Daewoo filed an untimely opposition in
response to Defendant's motion to dismiss, the Court prefers to adjudicate the motion on its
merits.  Accordingly, Opta's motion to strike the opposition is DENIED.

**United States District Court**
For the Northern District of California

GoVideo seeking compensation for electronic products Daewoo previously sold to GoVideo. GoVideo, experiencing financial turmoil, abandoned its lawsuit against Daewoo and permitted its counsel to withdraw from the case. The New Jersey District Court issued a default judgment on April 27, 2007, in favor of Daewoo and against GoVideo, totaling $7,775,670.98, plus interest, to compensate Daewoo for its unpaid invoices. (Reply Br., Ex. A at ¶ 38.)

On May 13, 2008, Daewoo filed a New Jersey state court action seeking partial payment on its 2007 default judgment against GoVideo on the grounds that Opta and TCL Industries, as affiliated entities and contractual guarantors of GoVideo, were liable under the parties' guaranty agreement for $5,000,000 out of the $7,750,000 default judgment. (Motion, Ex. A at 4.) The New Jersey District Court instead granted summary judgment for Opta and TCL Industries. (*Id.* at 7.) The court held Daewoo could not recover under the guaranty agreement to partially fulfill its 2007 default judgment because the guaranty agreement expired prior to Daewoo incurring the $7,750,000 debt. (*Id.*)

In this suit, Daewoo again attempts to recover on its 2007 default judgment against GoVideo. On March 20, 2013, Daewoo filed its original complaint against Opta, TCL Corporation, T.C.L. Industries Holdings Limited, and TCL Multimedia Technology Holding Limited (collectively, "TCL Entities"). On May 20, 2013, Daewoo filed a First Amended Complaint which alleges: (1) actual fraudulent transfer under California Civil Code § 3439.04, (2) constructive fraudulent transfer under California Civil Code § 3439.05, (3) alter ego, and (4) successor liability.

The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

### A.      Applicable Legal Standards for Motion to Dismiss.

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the Complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

1    Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the

2    claim showing that the pleader is entitled to relief."  Even under Rule 8(a)'s liberal pleading

3    standard, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

4    requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

5    of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing

6    *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Pursuant to *Twombly*, a plaintiff must not merely

7    allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief

8    that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff

9    pleads factual content that allows the court to draw the reasonable inference that the defendant

10   is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing

11   *Twombly*, 550 U.S. at 556).  "If the allegations are insufficient to state a claim, a court should

12   grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*,

13   912 F.2d 291, 296 (9th Cir. 1990).

14   **B.     Motion to Dismiss.**

15        Opta moves to dismiss on alternative bases.  The Court will address each in turn.

16        **1.     Daewoo's Claims are Barred by Res Judicata.**

17        Opta contends that the principle of res judicata bars Daewoo's claims because the

18   claims, made by parties in privity, have already been dismissed by the New Jersey District

19   Court.  "'Res judicata, also known as claim preclusion, bars litigation in a subsequent action of

20   any claims that were raised or could have been raised in [a] prior action.'" *Owens v. Kaiser*

21   *Foundation Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *Western Radio Servs.*

22   *Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)).  Res judicata applies when, as between

23   two actions, the Court finds "'(1) an identity of claims, (2) a final judgment on the merits, and

24   (3) identity or privity between parties.'" *Id*.  The parties neither dispute the presence of a final

25   judgment on the merits nor the presence of privity between the parties.

26        Daewoo instead argues that res judicata is inapplicable because there exists no "identity

27   of claims."  Courts look to the following criteria to determine if an "identity of claims" exists:

28        (1) whether rights or interests established in the prior judgment would be
          destroyed or impaired by prosecution of the second action; (2) whether

3

1    substantially the same evidence is presented in the two actions; (3) whether the
     two suits involve infringement of the same right; and (4) whether the two suits
2    arise out of the same transactional nucleus of facts.

3    *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982).

4          The most important criteria rests with whether the suits arise out of the same

5    transactional nucleus of facts. *Id*. at 1202. In the prior action filed in 2008 before the New

6    Jersey District Court, Daewoo sued Opta and TCL Industries to fulfill the 2007 default

7    judgment obtained against GoVideo by relying on a breach of a guaranty contract executed

8    between Opta, TCL Industries, and GoVideo. In the current action, Daewoo asserts claims

9    seeking again to fulfill the 2007 default judgment obtained against GoVideo but instead relies

10   on theories of fraudulent transfer, alter ego, and successor liability. Although both actions share

11   the common goal of satisfying the 2007 default judgment, Daewoo's current claims rely upon

12   entirely different transactional nucleus of facts. Daewoo could not have feasibly brought any

13   claims relating to or arising out of fraudulent transfers because any such transfer could not have

14   occurred by the time Daewoo filed its first lawsuit in 2008.[2] Although background,

15   miscellaneous facts of alter ego and successor liability overlap with the allegations of a previous

16   guaranty contract, Daewoo's alter ego and successor liability claims nonetheless do not directly

17   relate in substance to the guaranty contract. Accordingly, the Court DENIES Opta's motion to

18   dismiss Daewoo's claims for fraudulent transfer, alter ego, and successor liability based upon

19   res judicata.

20              **2.      Statute of Limitations on Actual Fraudulent Transfers.**

21         Opta asserts that Daewoo's causes of action under California's Uniform Fraudulent

22   Transfer Act ("UFTA") expired under the California UFTA statute of limitations. *See* Cal. Civ.

23   Code. § 3439.09(a)-(c). The Court will first address Daewoo's claim for actual fraudulent

24   transfer and then analyze Daewoo's claim for constructive fraudulent transfer.

25         Daewoo insists that its claim for actual fraudulent transfer falls within the requisite

26   statute of limitations. An action under § 3439.04(a)(1), for actual fraud, must be brought

27

28        [2] The Court recognizes that Daewoo does not allege the specific dates of the
     fraudulent transfer of assets. Nonetheless, any contention of a fraudulent transfer remains
     irrelevant to the existence of a guaranty agreement.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    "within four years after the transfer was made or the obligation was incurred or, if later, within

2    one year after the transfer or obligation was or could reasonably have been discovered by the

3    claimant." Cal. Civ. Code § 3439.09(a); *see also Donnell v. Keppers*, 835 F. Supp. 2d 871, 878

4    (S.D. Cal. 2011).  However, Daewoo fails to indicate in its Amended Complaint precisely when

5    the alleged fraudulent transfer or transfers even occurred.  Daewoo alleges in its Complaint that

6    "GoVideo transferred funds and/or assets to Opta and/or the TCL entities, including among

7    other things, pursuant to the July 26, 2005 TCLMM Agreement and related transactions

8    described in Opta's filings with the SEC." (Opp. Br. at 5:7-10.)  Daewoo further alleges that

9    "after July 26, 2005 Opta received $11.2 million in proceeds from the sale of certain stock as

10   part of the TCLMM Agreement [] that Opta later used at least $1 million of that money to fund

11   additional loans to GoVideo." (*Id.* at 5:16-23.)  These allegations remain ambiguous.  In

12   particular, Daewoo fails to clarify whether the "transferred funds and/or assets [...] pursuant to

13   the July 26, 2005 TCLMM agreement" represented the actual date of transfer of the funds

14   and/or assets.  Even if the Court assumes that Daewoo's original complaint, filed on March 20,

15   2013, alleged that GoVideo transferred funds on July 26, 2005, the Complaint would have been

16   filed nearly eight years after the transactions–well beyond the statute of limitations.

17            In addition, Daewoo's references to statements made in Opta's SEC filings do not

18   affirmatively demonstrate that a transfer actually occurred.  Even accepting as true Daewoo's

19   contention that the transfers occurred sometime after July 26, 2005, Daewoo does not indicate

20   precisely when after July 25, 2005.  This ambiguity prevents the Court from determining

21   whether Daewoo falls within the requisite statute of limitations.  Although Daewoo could

22   feasibly file a UFTA claim within one year of the transfer's discovery, Daewoo also failed to

23   allege when, after July 26, 2005, Daewoo actually discovered the transfers and whether those

24   transfers fall within the one year statute of limitations after discovery of a fraudulent transfer.

25   In either scenario, Daewoo fails to satisfy the statute of limitations requirement for actual

26   fraudulent transfers under the UFTA.

27            In its Amended Complaint, Daewoo alleges that "Opta settled the lawsuit filed by

28   MPEG-LA with a payment of money in 2009 [to MPEG-LA] [...] with assets and/or funds of

United States District Court

For the Northern District of California

1    GoVideo." (FAC at ¶ 56.) Daewoo argues that this allegation illustrates its actual fraudulent

2    transfer claim falls within the four year statute of limitations. (Opp. Br. at 6:4-8.) The Court

3    finds this argument unpersuasive. "The UFTA permits defrauded creditors to reach property in

4    the hands of a transferee." *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 2011 WL

5    3295420, at *4 (N.D. Cal. Aug. 1, 2011) (quoting *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003)).

6    Daewoo's fraudulent transfer claim concerns GoVideo's transfer of assets to Opta and other

7    affiliates in an attempt to deceive creditors such as Daewoo. It does not, however, consider

8    purported fraudulent transfers between Opta and MPEG-LA because Daewoo does not stand as

9    a direct and actual creditor of Opta. On the contrary, Daewoo neither alleges that it represented

10   an actual creditor of GoVideo nor asserted that GoVideo transferred its assets to MPEG-LA.

11   Daewoo cannot satisfy the statute of limitations by utilizing an alleged date relating to a transfer

12   between Opta and MPEG-LA, a third party. Again, Daewoo fails to provide the Court with the

13   precise dates of when GoVideo allegedly transferred assets to Opta. For these reasons, Daewoo

14   has not demonstrated that its allegations fall within the requisite statute of limitations for

15   fraudulent transfers under the UFTA.

16        Daewoo also argues that it alleges facts that fall within the statute of limitations for

17   discovery because "Daewoo could not have discovered that all [of] GoVideo's funds had been

18   transferred to Opta until [...] no earlier than August 24, 2009." (Opp. Br. at 6:17-24.) Although

19   the parties characterize this seven-year cutoff as a statute of limitations, California Civil Code

20   Section 3439.09(c) actually establishes a statute of repose, which creates an absolute backstop

21   of seven years within which a cause of action for fraudulent transfer must be filed. *See Donnell*,

22   835 F. Supp. 2d at 877. The statute of repose, by its nature, typically pertains only to fraudulent

23   transfers made at an earlier date but are not discovered until *after* the initial four year statute of

24   limitations. *See* Cal. Civ. Code § 3439.09. The aggrieved party would then potentially have an

25   additional three years to file a complaint before being completely time-barred by the statute of

26   repose. *Id*.

27        Here, Daewoo fails to indicate when the actual transfer occurred or when the purported

28   discovery of the possible fraudulent transfer or transfers took place. After discovery, Daewoo

1   only has one year to file a complaint before it fails by virtue of the passing of the statute of

2   limitations period.  Notwithstanding the one-year statute of limitations for newly-discovered

3   fraudulent transfers, Daewoo must comply with the statute of repose of seven years from when

4   the actual fraudulent transfer occurred.  Daewoo's allegations related to the timing of alleged

5   transfers remain ambiguous.  Accordingly, Daewoo cannot satisfy the statute of limitations or

6   repose for actual fraudulent transfers under the UFTA.

7       The Court GRANTS Opta's motion to dismiss Daewoo's actual fraudulent transfer

8   claims with leave to amend.

9           **3.      Statute of Limitations on Constructive Fraudulent Transfers.**

10      Daewoo further asserts that its claim for constructive fraudulent transfer complies with

11  the requisite statute of limitations.  In contrast to actual fraud, an action under § 3439.04(a)(2),

12  for constructive fraud, must be brought within four years after the transfer was made.  Cal. Civ.

13  Code. § 3439.09(b); *see also Donnell v. Kowell*, 533 F.3d 762, 773 (9th Cir. 2008).  The statute

14  does not incorporate a one-year discovery rule for constructive fraudulent transfers; therefore,

15  the seven-year statute of repose is inapplicable.  *See* Cal. Civ. Code § 3439.09(b).  For the same

16  reasons reiterated above, Daewoo has not satisfied the Court that its claim falls within the

17  required statute of limitations under a constructive fraudulent transfer theory.  Namely, Daewoo

18  does not indicate precisely when the constructive fraudulent transfers actually occurred.

19  Daewoo's references to ambiguous dates, evidencing only the possibility of a fraudulent

20  transfer, does not demonstrate that a transfer even occurred.  Because the Court cannot compute

21  the statute of limitations with the non-specific dates provided by Daewoo, Daewoo also cannot

22  satisfy the statute of limitations for constructive fraudulent transfers under the UFTA.

23      Accordingly, the Court GRANTS the motion to dismiss Daewoo's constructive

24  fraudulent transfer claims with leave to amend.

25          **3.      Failure to State a Claim for Alter Ego.**

26      Opta seeks to dismiss Daewoo's alter ego claim on alternative bases.  First, Opta argues

27  that an alter ego claim cannot stand on its own unless linked to an actual, substantive cause of

28  action.  However, California previously established that "a party may bring a wholly separate

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1     action against an individual shareholder on an alter ego theory to enforce a prior judgment

2     against the corporation." *Brenelli Armedeo, S.P.A. v. Bakara Furniture, Inc.*, 29 Cal. App. 4th

3     1828, 1840 (1994). This case involves a prior judgment against GoVideo and a subsequent suit

4     to enforce the judgment against Opta–the purported alter ego of GoVideo. The first action

5     conclusively established liability against GoVideo for unpaid invoices. This second suit must

6     establish the factual basis to justify piercing the corporate veil in order to view both

7     corporations as a single, legal entity. Unfortunately, the allegations made fail to link Daewoo's

8     alter ego claim with the prior 2007 default judgment.

9         Second, Opta contends that even if Daewoo properly linked the alter ego claim with the

10    prior 2007 default judgment, Daewoo nonetheless fails to state a claim for alter ego liability.

11    To properly plead an alter ego cause of action, a plaintiff must plead the elements of alter ego

12    and factors in support of those elements. *Wady v. Provident Life and Accident Ins. Co. of*

13    *America*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. Apr. 30, 2002) (quoting *Mesler v. Bragg*

14    *Management Co.*, 702 P.2d 601, 606 (1985)). These elements require "(1) that there be such

15    unity of interest and ownership that the separate personalities of the corporation and the

16    individual no longer exist and (2) that, if the acts are treated as those of the corporation alone,

17    an inequitable result will follow." *Bauman v. DaimlerChrysler Corp.*, 644 F. 3d 909, 920 (9th

18    Cir. 2011) (citing *Doe v. Unocal Corp.*, 248 F. 3d 915 (9th Cir. 2001)).

19         Daewoo asserts that its Complaint properly pleads the unity of interest element under an

20    alter ego theory. (FAC ¶ 78.) The Court may rely on the following factors to establish a unity

21    of interest: commingling of funds, identification of the equitable owners with domination and

22    control of the two entities, instrumentality or conduit for a single venture or the business of an

23    individual, failure to maintain minutes or adequate corporate records, use of the same office or

24    business locations, identical equitable ownership of the two entities, use of a corporation as a

25    mere shell, and the failure to adequately capitalize a corporation. *Id.* Some courts have held

26    that the pleading of at least two factors in support of a unity of interest satisfies this element.

27    *See Pacific Maritime Freight, Inc. v. Foster*, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24,

28    2010) (citing authority that the identification of unity of interest for alter ego liability plus two

or three factors was held sufficient to defeat a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (internal citations omitted).   Here, Daewoo pleads at least two factors in support of a unity of interest, including the contentions that "GoVideo was a mere instrumentality, agency, conduit, or adjunct of Opta and/or TCL Entities" and "Opta and/or TCL Entities directed and controlled GoVideo's dealings."   (*Id*. at ¶¶ 79-80.)   For these reasons, the Court finds that Daewoo has properly alleged a unity of interest.

Daewoo argues it properly alleges the second element of alter ego liability–the presence of an inequitable result.   (FAC ¶ 82.)   "California courts generally require evidence of some bad-faith conduct to fulfill the second prong of alter-ego liability, [and] that bad faith must make it inequitable to recognize the corporate form."   *Smith v. Simmons*, 638 F. Supp. 2d 1180, 1192 (E.D. Cal. June 23, 2009) (noting that California courts generally require some evidence of bad faith before concluding that an inequitable result justifies an alter ego finding); *see also Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 842 (1962) ("The purpose of the doctrine is not to protect every unsatisfied creditor, but rather to afford him protection, where some conduct amounting to bad faith makes it inequitable . . . for the equitable owner of a corporation to hide behind its corporate veil.").   Given this action represents Daewoo's second attempt to fulfill its 2007 default judgment, Daewoo has neither alleged facts demonstrating bad faith conduct on the part of the Defendants nor persuaded the Court that Daewoo resembles something more than an unsatisfied creditor.   The Court finds Daewoo has not properly alleged an inequitable result.

Although Daewoo has properly plead the unity of interest element, Daewoo has failed to allege the presence of an inequitable result and failed to link its alter ego claim with the prior 2007 default judgment.   Accordingly, the Court GRANTS the motion to dismiss the alter ego claim with leave to amend.

### 4.      Failure to State a Claim for Successor Liability.

Opta seeks to dismiss Daewoo's successor liability claim on the basis that it fails to state a claim upon which relief may be granted.   Generally speaking, successor corporations cannot be held liable unless one of the following exceptions exist: "(1) [an] express or implied

United States District Court

For the Northern District of California

agreement by the purchaser to assume liability; (2) a transaction that amounts to a consolidation or merger of the two entities; (3) [a] mere continuation of the selling corporation by [the] purchasing corporation; or (4) a fraudulent transaction entered into in an attempt to escape liability from debts." *McCellan v. Northridge Park Townhome Owners Ass'n, Inc.*, 89 Cal. App. 4th 746, 753 (2001). The Court will address each exception below.

First, Daewoo alleges the presence of an express or implied agreement by Opta and/or the TCL Entities to assume the liabilities of GoVideo. (FAC ¶ 85.) The presence of an express or implied agreement by the purchaser to assume liability establishes successor liability. *Ray v. Alad Corp*, 19 Cal. 3d 22, 28 (1977). However, Daewoo fails to provide any evidence or facts in support of the existence of an express or implied assumption agreement. The Court cannot presume, on behalf of Daewoo, the presence of an express or implied agreement; thus, Daewoo fails under this first exception.

Second, Daewoo asserts that "Opta and/or TCL Entities [] acquired the assets and business of GoVideo such that it amounted to a consolidation or merger of the corporation." (FAC ¶ 86.) To determine whether two entities entered into a consolidation or merger transaction, courts require that "one corporation take[] all of another's assets without providing any consideration for Daewoo to meet claims of the other's creditors." *Ray*, 19 Cal. 3d at 28. Daewoo alleges that Defendants took all of GoVideo's assets without providing any consideration to GoVideo. (FAC ¶ 86.) As a result, GoVideo could not fulfill any of its debts to Daewoo. *Id*. The Court finds that Daewoo has properly alleged a consolidation or merger between Daewoo and Opta, which satisfies the second exception for a successor liability claim.

Third, Daewoo purports that "Opta and/or TCL Entities were a mere continuation of GoVideo because Vincent Yan, among others, was an officer, director, or stockholder of some or all of the corporations." (*Id*. at ¶ 87.) Courts have held a corporation as a mere continuation of another corporation and thus liable for the former corporation's debts if "(1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors [or] (2) one or more persons were officers, directors, or stockholders of both corporations." *Ray*, 19 Cal. 3d at 29. Daewoo appears to rely on the latter

element by asserting that Vincent Yan held positions as an officer, director, or stockholder of both corporations. Daewoo asserts that Vincent Yan held a position as director, president and CEO of Opta, as director of TCL, with an affiliation with Asia Focus, and an affiliation and position with TCLMM. (FAC ¶ 8.) However, Daewoo fails to allege that Vincent Yan, or any other person, held an officer, director, or stockholder position at *both* GoVideo and Opta or the TCL Entities. Accordingly, Daewoo fails to assert successor liability under the third exception.

Fourth and finally, Daewoo asserts that "the transfer of assets from GoVideo to Opta and/or the TCL Entities was done for the fraudulent purpose of escaping liability for GoVideo's debts, including those to Daewoo." (*Id*. at ¶ 88.) Courts often analyze factors such as the sufficiency of the consideration given for the sale, the insufficient assets of the selling company, or the intent of the purchaser or seller involved in the sale to avoid liability to determine whether the transaction was fraudulent. *Ferguson v. Arcata Redwood Co., LLC*, 2004 WL 2600471, at *5 (N.D. Cal. Nov. 12, 2004) (citing *Atchison, Topeka and Santa Fe Ry. Co. v. Brown & Bryant, Inc.*, 159 F. 3d 358, 365 (9th Cir. 2007)). Indeed, "mere conclusory allegations of fraud are insufficient." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)); *see also* Fed. R. Civ. P. 9(b). Here, Daewoo fails to plead any facts in support of any of these factors to justify a fraudulent transaction claim under successor liability. *See, e.g. Craigslist*, 2010 WL 5300883, at *8 (noting that facts about an e-mail correspondence outlining steps to avoid liability by transferring assets supported a claim for successor liability under the fraudulent transaction exception). Daewoo fails under the fourth exception.

Daewoo fails to assert a claim for successor liability under the first, third, and fourth exceptions. In contrast, Daewoo properly asserts a claim for successor liability under the second exception–the transfer of assets amounted to a consolidation or merger. Accordingly, the Court DENIES Opta's motion to dismiss Daewoo's claim for successor liability.[3]

---

[3] The Court acknowledges Opta's concern that Daewoo fails to allege only one entity that resembles the successor of GoVideo. Although Daewoo may wish to clarify this point in any subsequent pleadings, the Court declines to dismiss Daewoo's successor liability claims solely on this distinction. (*See* FAC, ¶ 84.)

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Opta's motion to dismiss. Opta's motion to dismiss on both actual and constructive fraudulent claims under the UFTA are GRANTED with leave to amend. Opta's motion to dismiss the alter ego claim is GRANTED with leave to amend. Finally, Opta's motion to dismiss the successor liability claim is DENIED.

If Daewoo chooses to amend the complaint, Daewoo shall file and serve a Second Amended Complaint consistent with the Court's Order within fourteen days of the date of this Order. Opta shall thereafter have fourteen days following service of the Second Amended Complaint to file a response.

**IT IS SO ORDERED.**

Dated:  July 25, 2013

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California