IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF Cp-ALIFORNIA

| | |
|---|---|
| DAEWOO ELECTRONICS AMERICA INC., | No. C 13-1247 JSW |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| OPTA CORPORATION, ET AL., | |
| Defendants. | |

Now before the court is Defendant Opta Corporation's ("Opta") motion to dismiss the First Amended Complaint of Plaintiff Daewoo Electronics America, Inc. ("Daewoo"). The Court finds the motion fully briefed, ripe for decision, and suitable for resolution without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the Court hereby VACATES the hearing set for August 9, 2013. Having considered the parties' papers and the relevant legal authority, the Court GRANTS IN PART and DENIES IN PART Opta's motion to dismiss.[1]

**BACKGROUND**

In this action, Daewoo, an electronics manufacturer, seeks to recover damages of approximately $7,775,000 in unpaid invoices from DVD and VHS products Daewoo sold to GoVideo, a third-party electronics retailer. (First Amended Complaint ("FAC") at 15.)

On November 2005, GoVideo filed a Complaint against Daewoo in the United States District Court for the District of New Jersey alleging, *inter alia*, breach of contract and breach of duty of good faith and fair dealing. In response, Daewoo asserted a counterclaim against

---

[1] Although the Court acknowledges that Daewoo filed an untimely opposition in response to Defendant's motion to dismiss, the Court prefers to adjudicate the motion on its merits. Accordingly, Opta's motion to strike the opposition is DENIED.

1  GoVideo seeking compensation for electronic products Daewoo previously sold to GoVideo.
2  GoVideo, experiencing financial turmoil, abandoned its lawsuit against Daewoo and permitted
3  its counsel to withdraw from the case. The New Jersey District Court issued a default judgment
4  on April 27, 2007, in favor of Daewoo and against GoVideo, totaling $7,775,670.98, plus
5  interest, to compensate Daewoo for its unpaid invoices. (Reply Br., Ex. A at ¶ 38.)

6  On May 13, 2008, Daewoo filed a New Jersey state court action seeking partial payment
7  on its 2007 default judgment against GoVideo on the grounds that Opta and TCL Industries, as
8  affiliated entities and contractual guarantors of GoVideo, were liable under the parties' guaranty
9  agreement for $5,000,000 out of the $7,750,000 default judgment. (Motion, Ex. A at 4.) The
10 New Jersey District Court instead granted summary judgment for Opta and TCL Industries. (*Id*.
11 at 7.) The court held Daewoo could not recover under the guaranty agreement to partially fulfill
12 its 2007 default judgment because the guaranty agreement expired prior to Daewoo incurring
13 the $7,750,000 debt. (*Id*.)

14 In this suit, Daewoo again attempts to recover on its 2007 default judgment against
15 GoVideo. On March 20, 2013, Daewoo filed its original complaint against Opta, TCL
16 Corporation, T.C.L. Industries Holdings Limited, and TCL Multimedia Technology Holding
17 Limited (collectively, "TCL Entities"). On May 20, 2013, Daewoo filed a First Amended
18 Complaint which alleges: (1) actual fraudulent transfer under California Civil Code § 3439.04,
19 (2) constructive fraudulent transfer under California Civil Code § 3439.05, (3) alter ego, and (4)
20 successor liability.

21 The Court shall address additional facts as necessary in the remainder of this Order.

**ANALYSIS**

**A.   Applicable Legal Standards for Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the Complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Even under Rule 8(a)'s liberal pleading standard, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

**B.    Motion to Dismiss.**

Opta moves to dismiss on alternative bases. The Court will address each in turn.

    **1.    Daewoo's Claims are Barred by Res Judicata.**

Opta contends that the principle of res judicata bars Daewoo's claims because the claims, made by parties in privity, have already been dismissed by the New Jersey District Court. "'Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in [a] prior action.'" *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)). Res judicata applies when, as between two actions, the Court finds "'(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties.'" *Id*. The parties neither dispute the presence of a final judgment on the merits nor the presence of privity between the parties.

Daewoo instead argues that res judicata is inapplicable because there exists no "identity of claims." Courts look to the following criteria to determine if an "identity of claims" exists:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether

3

substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982).

The most important criteria rests with whether the suits arise out of the same transactional nucleus of facts. *Id*. at 1202. In the prior action filed in 2008 before the New Jersey District Court, Daewoo sued Opta and TCL Industries to fulfill the 2007 default judgment obtained against GoVideo by relying on a breach of a guaranty contract executed between Opta, TCL Industries, and GoVideo. In the current action, Daewoo asserts claims seeking again to fulfill the 2007 default judgment obtained against GoVideo but instead relies on theories of fraudulent transfer, alter ego, and successor liability. Although both actions share the common goal of satisfying the 2007 default judgment, Daewoo's current claims rely upon entirely different transactional nucleus of facts. Daewoo could not have feasibly brought any claims relating to or arising out of fraudulent transfers because any such transfer could not have occurred by the time Daewoo filed its first lawsuit in 2008.[2] Although background, miscellaneous facts of alter ego and successor liability overlap with the allegations of a previous guaranty contract, Daewoo's alter ego and successor liability claims nonetheless do not directly relate in substance to the guaranty contract. Accordingly, the Court DENIES Opta's motion to dismiss Daewoo's claims for fraudulent transfer, alter ego, and successor liability based upon res judicata.

**2.     Statute of Limitations on Actual Fraudulent Transfers.**

Opta asserts that Daewoo's causes of action under California's Uniform Fraudulent Transfer Act ("UFTA") expired under the California UFTA statute of limitations. *See* Cal. Civ. Code. § 3439.09(a)-(c). The Court will first address Daewoo's claim for actual fraudulent transfer and then analyze Daewoo's claim for constructive fraudulent transfer.

Daewoo insists that its claim for actual fraudulent transfer falls within the requisite statute of limitations. An action under § 3439.04(a)(1), for actual fraud, must be brought

---

[2] The Court recognizes that Daewoo does not allege the specific dates of the fraudulent transfer of assets. Nonetheless, any contention of a fraudulent transfer remains irrelevant to the existence of a guaranty agreement.

4

"within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Cal. Civ. Code § 3439.09(a); *see also Donnell v. Keppers*, 835 F. Supp. 2d 871, 878 (S.D. Cal. 2011). However, Daewoo fails to indicate in its Amended Complaint precisely when the alleged fraudulent transfer or transfers even occurred. Daewoo alleges in its Complaint that "GoVideo transferred funds and/or assets to Opta and/or the TCL entities, including among other things, pursuant to the July 26, 2005 TCLMM Agreement and related transactions described in Opta's filings with the SEC." (Opp. Br. at 5:7-10.) Daewoo further alleges that "after July 26, 2005 Opta received $11.2 million in proceeds from the sale of certain stock as part of the TCLMM Agreement [] that Opta later used at least $1 million of that money to fund additional loans to GoVideo." (*Id*. at 5:16-23.) These allegations remain ambiguous. In particular, Daewoo fails to clarify whether the "transferred funds and/or assets [...] pursuant to the July 26, 2005 TCLMM agreement" represented the actual date of transfer of the funds and/or assets. Even if the Court assumes that Daewoo's original complaint, filed on March 20, 2013, alleged that GoVideo transferred funds on July 26, 2005, the Complaint would have been filed nearly eight years after the transactions–well beyond the statute of limitations.

In addition, Daewoo's references to statements made in Opta's SEC filings do not affirmatively demonstrate that a transfer actually occurred. Even accepting as true Daewoo's contention that the transfers occurred sometime after July 26, 2005, Daewoo does not indicate precisely when after July 25, 2005. This ambiguity prevents the Court from determining whether Daewoo falls within the requisite statute of limitations. Although Daewoo could feasibly file a UFTA claim within one year of the transfer's discovery, Daewoo also failed to allege when, after July 26, 2005, Daewoo actually discovered the transfers and whether those transfers fall within the one year statute of limitations after discovery of a fraudulent transfer. In either scenario, Daewoo fails to satisfy the statute of limitations requirement for actual fraudulent transfers under the UFTA.

In its Amended Complaint, Daewoo alleges that "Opta settled the lawsuit filed by MPEG-LA with a payment of money in 2009 [to MPEG-LA] [...] with assets and/or funds of

GoVideo." (FAC at ¶ 56.) Daewoo argues that this allegation illustrates its actual fraudulent transfer claim falls within the four year statute of limitations. (Opp. Br. at 6:4-8.) The Court finds this argument unpersuasive. "The UFTA permits defrauded creditors to reach property in the hands of a transferee." *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 2011 WL 3295420, at *4 (N.D. Cal. Aug. 1, 2011) (quoting *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003)). Daewoo's fraudulent transfer claim concerns GoVideo's transfer of assets to Opta and other affiliates in an attempt to deceive creditors such as Daewoo. It does not, however, consider purported fraudulent transfers between Opta and MPEG-LA because Daewoo does not stand as a direct and actual creditor of Opta. On the contrary, Daewoo neither alleges that it represented an actual creditor of GoVideo nor asserted that GoVideo transferred its assets to MPEG-LA. Daewoo cannot satisfy the statute of limitations by utilizing an alleged date relating to a transfer between Opta and MPEG-LA, a third party. Again, Daewoo fails to provide the Court with the precise dates of when GoVideo allegedly transferred assets to Opta. For these reasons, Daewoo has not demonstrated that its allegations fall within the requisite statute of limitations for fraudulent transfers under the UFTA.

Daewoo also argues that it alleges facts that fall within the statute of limitations for discovery because "Daewoo could not have discovered that all [of] GoVideo's funds had been transferred to Opta until [...] no earlier than August 24, 2009." (Opp. Br. at 6:17-24.) Although the parties characterize this seven-year cutoff as a statute of limitations, California Civil Code Section 3439.09(c) actually establishes a statute of repose, which creates an absolute backstop of seven years within which a cause of action for fraudulent transfer must be filed. *See Donnell*, 835 F. Supp. 2d at 877. The statute of repose, by its nature, typically pertains only to fraudulent transfers made at an earlier date but are not discovered until *after* the initial four year statute of limitations. *See* Cal. Civ. Code § 3439.09. The aggrieved party would then potentially have an additional three years to file a complaint before being completely time-barred by the statute of repose. *Id*.

Here, Daewoo fails to indicate when the actual transfer occurred or when the purported discovery of the possible fraudulent transfer or transfers took place. After discovery, Daewoo

6

1  only has one year to file a complaint before it fails by virtue of the passing of the statute of
2  limitations period. Notwithstanding the one-year statute of limitations for newly-discovered
3  fraudulent transfers, Daewoo must comply with the statute of repose of seven years from when
4  the actual fraudulent transfer occurred. Daewoo's allegations related to the timing of alleged
5  transfers remain ambiguous. Accordingly, Daewoo cannot satisfy the statute of limitations or
6  repose for actual fraudulent transfers under the UFTA.

7  The Court GRANTS Opta's motion to dismiss Daewoo's actual fraudulent transfer
8  claims with leave to amend.

### 3. Statute of Limitations on Constructive Fraudulent Transfers.

Daewoo further asserts that its claim for constructive fraudulent transfer complies with the requisite statute of limitations. In contrast to actual fraud, an action under § 3439.04(a)(2), for constructive fraud, must be brought within four years after the transfer was made. Cal. Civ. Code. § 3439.09(b); *see also Donnell v. Kowell*, 533 F.3d 762, 773 (9th Cir. 2008). The statute does not incorporate a one-year discovery rule for constructive fraudulent transfers; therefore, the seven-year statute of repose is inapplicable. *See* Cal. Civ. Code § 3439.09(b). For the same reasons reiterated above, Daewoo has not satisfied the Court that its claim falls within the required statute of limitations under a constructive fraudulent transfer theory. Namely, Daewoo does not indicate precisely when the constructive fraudulent transfers actually occurred. Daewoo's references to ambiguous dates, evidencing only the possibility of a fraudulent transfer, does not demonstrate that a transfer even occurred. Because the Court cannot compute the statute of limitations with the non-specific dates provided by Daewoo, Daewoo also cannot satisfy the statute of limitations for constructive fraudulent transfers under the UFTA.

Accordingly, the Court GRANTS the motion to dismiss Daewoo's constructive fraudulent transfer claims with leave to amend.

### 3. Failure to State a Claim for Alter Ego.

Opta seeks to dismiss Daewoo's alter ego claim on alternative bases. First, Opta argues that an alter ego claim cannot stand on its own unless linked to an actual, substantive cause of action. However, California previously established that "a party may bring a wholly separate

1  action against an individual shareholder on an alter ego theory to enforce a prior judgment
2  against the corporation." *Brenelli Armedeo, S.P.A. v. Bakara Furniture, Inc.*, 29 Cal. App. 4th
3  1828, 1840 (1994). This case involves a prior judgment against GoVideo and a subsequent suit
4  to enforce the judgment against Opta–the purported alter ego of GoVideo. The first action
5  conclusively established liability against GoVideo for unpaid invoices. This second suit must
6  establish the factual basis to justify piercing the corporate veil in order to view both
7  corporations as a single, legal entity. Unfortunately, the allegations made fail to link Daewoo's
8  alter ego claim with the prior 2007 default judgment.

9  Second, Opta contends that even if Daewoo properly linked the alter ego claim with the
10 prior 2007 default judgment, Daewoo nonetheless fails to state a claim for alter ego liability.
11 To properly plead an alter ego cause of action, a plaintiff must plead the elements of alter ego
12 and factors in support of those elements. *Wady v. Provident Life and Accident Ins. Co. of*
13 *America*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. Apr. 30, 2002) (quoting *Mesler v. Bragg*
14 *Management Co.*, 702 P.2d 601, 606 (1985)). These elements require "(1) that there be such
15 unity of interest and ownership that the separate personalities of the corporation and the
16 individual no longer exist and (2) that, if the acts are treated as those of the corporation alone,
17 an inequitable result will follow." *Bauman v. DaimlerChrysler Corp.*, 644 F. 3d 909, 920 (9th
18 Cir. 2011) (citing *Doe v. Unocal Corp.*, 248 F. 3d 915 (9th Cir. 2001)).

19 Daewoo asserts that its Complaint properly pleads the unity of interest element under an
20 alter ego theory. (FAC ¶ 78.) The Court may rely on the following factors to establish a unity
21 of interest: commingling of funds, identification of the equitable owners with domination and
22 control of the two entities, instrumentality or conduit for a single venture or the business of an
23 individual, failure to maintain minutes or adequate corporate records, use of the same office or
24 business locations, identical equitable ownership of the two entities, use of a corporation as a
25 mere shell, and the failure to adequately capitalize a corporation. *Id.* Some courts have held
26 that the pleading of at least two factors in support of a unity of interest satisfies this element.
27 *See Pacific Maritime Freight, Inc. v. Foster*, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24,
28 2010) (citing authority that the identification of unity of interest for alter ego liability plus two

8

1 or three factors was held sufficient to defeat a motion to dismiss pursuant to Federal Rule of
2 Civil Procedure 12(b)(6)) (internal citations omitted). Here, Daewoo pleads at least two factors
3 in support of a unity of interest, including the contentions that "GoVideo was a mere
4 instrumentality, agency, conduit, or adjunct of Opta and/or TCL Entities" and "Opta and/or
5 TCL Entities directed and controlled GoVideo's dealings." (*Id*. at ¶¶ 79-80.) For these reasons,
6 the Court finds that Daewoo has properly alleged a unity of interest.

7 Daewoo argues it properly alleges the second element of alter ego liability–the presence
8 of an inequitable result. (FAC ¶ 82.) "California courts generally require evidence of some
9 bad-faith conduct to fulfill the second prong of alter-ego liability, [and] that bad faith must
10 make it inequitable to recognize the corporate form." *Smith v. Simmons*, 638 F. Supp. 2d 1180,
11 1192 (E.D. Cal. June 23, 2009) (noting that California courts generally require some evidence
12 of bad faith before concluding that an inequitable result justifies an alter ego finding); *see also*
13 *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 842 (1962) ("The purpose
14 of the doctrine is not to protect every unsatisfied creditor, but rather to afford him protection,
15 where some conduct amounting to bad faith makes it inequitable . . . for the equitable owner of
16 a corporation to hide behind its corporate veil."). Given this action represents Daewoo's second
17 attempt to fulfill its 2007 default judgment, Daewoo has neither alleged facts demonstrating bad
18 faith conduct on the part of the Defendants nor persuaded the Court that Daewoo resembles
19 something more than an unsatisfied creditor. The Court finds Daewoo has not properly alleged
20 an inequitable result.

21 Although Daewoo has properly plead the unity of interest element, Daewoo has failed to
22 allege the presence of an inequitable result and failed to link its alter ego claim with the prior
23 2007 default judgment. Accordingly, the Court GRANTS the motion to dismiss the alter ego
24 claim with leave to amend.

25     **4.    Failure to State a Claim for Successor Liability.**

26 Opta seeks to dismiss Daewoo's successor liability claim on the basis that it fails to state
27 a claim upon which relief may be granted. Generally speaking, successor corporations cannot
28 be held liable unless one of the following exceptions exist: "(1) [an] express or implied

9

agreement by the purchaser to assume liability; (2) a transaction that amounts to a consolidation or merger of the two entities; (3) [a] mere continuation of the selling corporation by [the] purchasing corporation; or (4) a fraudulent transaction entered into in an attempt to escape liability from debts." *McCellan v. Northridge Park Townhome Owners Ass'n, Inc.*, 89 Cal. App. 4th 746, 753 (2001). The Court will address each exception below.

First, Daewoo alleges the presence of an express or implied agreement by Opta and/or the TCL Entities to assume the liabilities of GoVideo. (FAC ¶ 85.) The presence of an express or implied agreement by the purchaser to assume liability establishes successor liability. *Ray v. Alad Corp*, 19 Cal. 3d 22, 28 (1977). However, Daewoo fails to provide any evidence or facts in support of the existence of an express or implied assumption agreement. The Court cannot presume, on behalf of Daewoo, the presence of an express or implied agreement; thus, Daewoo fails under this first exception.

Second, Daewoo asserts that "Opta and/or TCL Entities [] acquired the assets and business of GoVideo such that it amounted to a consolidation or merger of the corporation." (FAC ¶ 86.) To determine whether two entities entered into a consolidation or merger transaction, courts require that "one corporation take[] all of another's assets without providing any consideration for Daewoo to meet claims of the other's creditors." *Ray*, 19 Cal. 3d at 28. Daewoo alleges that Defendants took all of GoVideo's assets without providing any consideration to GoVideo. (FAC ¶ 86.) As a result, GoVideo could not fulfill any of its debts to Daewoo. *Id*. The Court finds that Daewoo has properly alleged a consolidation or merger between Daewoo and Opta, which satisfies the second exception for a successor liability claim.

Third, Daewoo purports that "Opta and/or TCL Entities were a mere continuation of GoVideo because Vincent Yan, among others, was an officer, director, or stockholder of some or all of the corporations." (*Id*. at ¶ 87.) Courts have held a corporation as a mere continuation of another corporation and thus liable for the former corporation's debts if "(1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors [or] (2) one or more persons were officers, directors, or stockholders of both corporations." *Ray*, 19 Cal. 3d at 29. Daewoo appears to rely on the latter

1  element by asserting that Vincent Yan held positions as an officer, director, or stockholder of
2  both corporations. Daewoo asserts that Vincent Yan held a position as director, president and
3  CEO of Opta, as director of TCL, with an affiliation with Asia Focus, and an affiliation and
4  position with TCLMM. (FAC ¶ 8.) However, Daewoo fails to allege that Vincent Yan, or any
5  other person, held an officer, director, or stockholder position at *both* GoVideo and Opta or the
6  TCL Entities. Accordingly, Daewoo fails to assert successor liability under the third exception.

7  Fourth and finally, Daewoo asserts that "the transfer of assets from GoVideo to Opta
8  and/or the TCL Entities was done for the fraudulent purpose of escaping liability for GoVideo's
9  debts, including those to Daewoo." (*Id.* at ¶ 88.) Courts often analyze factors such as the
10 sufficiency of the consideration given for the sale, the insufficient assets of the selling company,
11 or the intent of the purchaser or seller involved in the sale to avoid liability to determine
12 whether the transaction was fraudulent. *Ferguson v. Arcata Redwood Co., LLC*, 2004 WL
13 2600471, at *5 (N.D. Cal. Nov. 12, 2004) (citing *Atchison, Topeka and Santa Fe Ry. Co. v.
14 Brown & Bryant, Inc.*, 159 F. 3d 358, 365 (9th Cir. 2007)). Indeed, "mere conclusory
15 allegations of fraud are insufficient." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th
16 Cir. 1994)); *see also* Fed. R. Civ. P. 9(b). Here, Daewoo fails to plead any facts in support of
17 any of these factors to justify a fraudulent transaction claim under successor liability. *See, e.g.
18 Craigslist*, 2010 WL 5300883, at *8 (noting that facts about an e-mail correspondence outlining
19 steps to avoid liability by transferring assets supported a claim for successor liability under the
20 fraudulent transaction exception). Daewoo fails under the fourth exception.

21 Daewoo fails to assert a claim for successor liability under the first, third, and fourth
22 exceptions. In contrast, Daewoo properly asserts a claim for successor liability under the
23 second exception–the transfer of assets amounted to a consolidation or merger. Accordingly,
24 the Court DENIES Opta's motion to dismiss Daewoo's claim for successor liability.[3]

---

[3] The Court acknowledges Opta's concern that Daewoo fails to allege only one entity that resembles the successor of GoVideo. Although Daewoo may wish to clarify this point in any subsequent pleadings, the Court declines to dismiss Daewoo's successor liability claims solely on this distinction. (*See* FAC, ¶ 84.)

11

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Opta's motion to dismiss. Opta's motion to dismiss on both actual and constructive fraudulent claims under the UFTA are GRANTED with leave to amend. Opta's motion to dismiss the alter ego claim is GRANTED with leave to amend. Finally, Opta's motion to dismiss the successor liability claim is DENIED.

If Daewoo chooses to amend the complaint, Daewoo shall file and serve a Second Amended Complaint consistent with the Court's Order within fourteen days of the date of this Order. Opta shall thereafter have fourteen days following service of the Second Amended Complaint to file a response.

**IT IS SO ORDERED.**

Dated: July 25, 2013

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE