UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINIADAEWOO ELECTRONICS AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> OPTA CORPORATION, <br><br> Defendant. | Case No. 13-cv-01247-VC (MEJ) <br><br> **DISCOVERY ORDER** <br><br> Re: Dkt. No. 125 |

## INTRODUCTION

Pending before the Court is the parties' discovery letter brief ("Letter Brief"). Joint Ltr., Dkt. No. 125. In the Letter Brief, Defendants Opta Corporation and TCL Multimedia Technology Limited (collectively, "Defendants") ask the Court to compel Plaintiff to supplement its responses to Opta's fourth set of interrogatories. Having considered the parties' positions, relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

In April 2003, TCL Industries (a stockholder controlling the majority of Opta's outstanding shares) purchased GoVideo out of bankruptcy. Sec. Amend. Compl., Dkt. No. 34. "Opta operated as a consumer electronics original equipment manufacturer through its wholly owned subsidiary Opta Systems, L.L.C., which did business as GoVideo." *Id.* at 5. In December 2003, TCL Industries, Opta, and Lotus Partners entered into a guaranty agreement with Plaintiff (f.k.a. Daewoo Electronics America Inc. ("Daewoo")). *Id.* Under this agreement, TCL Industries, Opta, and Lotus Partners "unconditionally guaranteed the payment of obligations not exceeding $5,000,000 to Daewoo for the products Daewoo shipped to GoVideo." *Id.* From October 2003 to April 2005, GoVideo submitted numerous purchase orders to Daewoo, which Daewoo fulfilled

and invoiced GoVideo. *Id.* "GoVideo did not pay Daewoo the amounts in the invoices when they were due, or ever." *Id.* at 6. By June 30, 2005, GoVideo owed Daewoo at least $7,775,670.98 ("Debt") under the invoices for the fulfilled purchase orders. *Id.* at 7.

On November 14, 2005, GoVideo filed an action, for breach of contract and other claims, against Daewoo in the United States District Court for the District of New Jersey, *Opta Sys., LLC v. Daewoo Elecs. Am.*, Civil Action No. 05-5387 (D.N.J.) ("New Jersey Action"). *Id.* at 10. On January 27, 2006, Daewoo filed counterclaims in the New Jersey Action, seeking payment of the Debt. *Id.* Litigation continued in the New Jersey Action until April 27, 2007, when the District of New Jersey entered a default judgment for the amount of $7,775,670.98, plus interest, against GoVideo. *Id.* at 13. Then, on May 13, 2008, Daewoo filed a state court action in New Jersey ("2008 Lawsuit"), seeking partial payment on its default judgment against GoVideo on the grounds that Opta and TCL Industries, as affiliated entities and contractual guarantors of GoVideo, were liable under the guaranty agreement for $5,000,000. Order Den. Def's Mot. to Dismiss Second Am. Compl., Dkt. No. 48. The New Jersey District Court granted summary judgment for Opta and TCL Industries, holding that Daewoo could not recover under the guaranty agreement to partially fulfill its default judgment because the guaranty agreement expired prior to the entry of the default judgment. *Id.* at 2.

## PROCEDURAL HISTORY

Daewoo brought the present action in March 2013, alleging (1) actual and constructive fraudulent transfers, and (2) alter ego and (3) successor liability for the unpaid default judgment. Compl., Dkt. No. 1. On August 22, 2013, Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint. Mot. to Dismiss, Dkt. No. 39. The Court issued an order denying Opta's motion, stating that the revisions from the second amended complaint were sufficient to state a claim at this early stage. Order Den. Def's Mot. to Dismiss, Dkt. No. 48. TCLMM filed a motion seeking clarity from the Court regarding its order on Defendants' jointly filed motion to dismiss. TCLMM's Mot. for Clarification, Dkt. No. 49. The Court allowed TCLMM to file a separate motion to dismiss. Order re: Request for Clarification, Dkt. No. 55. On April 11, 2014, TCLMM filed a Motion to Dismiss Plaintiff's Second Amended Complaint. TCLMM's Mot. to Dismiss,

2

Dkt. No. 56. The Court issued an order granting in part and denying in part the motion to dismiss. Order re: TCLMM's Mot. to Dismiss, Dkt. No. 74. The Court held that Daewoo failed to identify any specific transfers to assert the fraudulent transfer claims against TCLMM and therefore the Court dismissed this claim with prejudice. *Id.* at 2. However, the Court denied TCLMM's motion to dismiss for the remaining claims of alter ego and successor liability, holding that the ruling from the prior order denying Defendant's motion to dismiss applied equally to TCLMM and therefore Plaintiff's alter ego and successor liability claims may proceed. *Id.* at 3-4. Defendants then moved for judgment on the pleadings and to dismiss Daewoo's lawsuit with prejudice. Mot. for J. on the Pleadings, Dkt. 80. On August 28, 2014, the Court granted in part and denied in part the motion for judgment on the pleadings. Order re: Mot. for J. on the Pleadings, Dkt. No 84. The Court, in determining whether res judicata barred the current action, held that the claims in the current suit arose from the same transaction as the claims in the New Jersey Action. *Id.* at 1-2. Thus, the Court ruled that the doctrine of res judicata applied and all of Daewoo claims against the defendants, except the fraudulent transfer claim against Opta, were dismissed with prejudice. *Id.* at 5. On December 19, 2014, Daewoo appealed the Court's ruling. Notice of Appeal, Dkt. No. 89. On December 7, 2017, the Ninth Circuit Court of Appeals ("Court of Appeals") reversed and remanded the case for further proceedings. Op., Dkt. No. 91. The Court of Appeals held that the claims in the present action and in the 2008 guaranty action did not arise from the same transaction or occurrence, and therefore, "New Jersey's version of traditional res judicata does not apply." *Id.* at 3. On April 9, 2018, Defendants filed a petition for writ of certiorari, which the United States Supreme Court denied on June 18, 2018. Supreme Ct. of the United States Ltr. to USCA, Dkt. Nos. 102, 110.

On March 30, 2018, this Court reopened the case, and set a discovery cutoff date of July 20, 2018. Order Reopening Case and Setting Schedule, Dkt. No 96.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26 advisory committee notes (2015 amendments). Factors to

consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.* However, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 (amended 2015). Thus, there is "a shared responsibility on all the parties to consider the factors bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the courts." *Nevro Corp v. Boston Sci. Corp.*, 2018 WL 538612, at *1 (N.D. Cal. Jan. 24, 2018). *See also Salazar v. McDonald's Corp.*, 2016 WL 736213, at *2 (N.D. Cal. Feb. 25, 2016); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing advisory committee notes for the proposition that parties share a "collective responsibility" to consider proportionality and requiring that "[b]oth parties . . . tailor their efforts to the needs of th[e] case").

**DISCUSSION**

The Letter Brief details the parties' dispute regarding Plaintiff's discovery responses, specifically to Interrogatory Nos. 17, 18, 19, 20, 22, 23, and 28-37. Letter Brief at 1. As set forth in the letter, on July 11, 2018, the parties met and conferred regarding the disputes over Plaintiff's discovery responses to Defendant Opta's fourth set of interrogatories and they did not resolve their disputes. *Id.* Defendants request the Court move to compel Plaintiff's responses. *Id.*

**I.     Interrogatory No. 17**

In Interrogatory No. 17, Opta asks Plaintiff to "[i]dentify and describe when, where, why, and what documents . . . relating to any sales, returns, or communications between Daewoo and GoVideo were destroyed or lost[, and to] identity person(s) with knowledge, their location, [and] their knowledge." Pl.'s Resp. to Def. Opta's Fourth Set of Interrogs., Ex. A to the Letter Brief ("Ex. A"), Dkt. No. 125. Defendants argue that the information sought is relevant to their unclean hands and laches defenses, as information regarding the sales and interactions between Plaintiff and GoVideo form the bases for the default judgment against GoVideo for unpaid invoices. Letter

4

Brief at 2. Plaintiff argues that the default judgment has never been appealed or challenged by any party in this case or otherwise, and that the validity of the default judgment is established by the default judgment itself. Ex. A at 12.

A plaintiff asking a court for equitable relief "must come with clean hands." *Northbay Wellness Group, Inc. v. Beyries*, 789 F.3d 956, 959 (9th Cir. 2015) (quoting *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944).) Specifically, the doctrine of unclean hands requires that a plaintiff "acted fairly and without fraud or deceit as to the controversy in issue." *Id.* (quoting *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985).) Thus, for the interrogatory to be relevant to Defendants' unclean hands defense, "the misconduct that brings the [un]clean hands doctrine into play must relate *directly* to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice." *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 979 (1999) (emphasis added). Further, plaintiff's misconduct must be intentional, as "[b]ad intent is the essence of the defense [of unclean hands]." *Wells Fargo & Co. v. Stagecoach Properties, Inc.*, 685 F.2d 302, 308 (9th Cir. 1982). Defendants state that their request for information about the sales and interactions between Plaintiff and GoVideo "form the basis for this whole series of litigations" and that "the basis for Plaintiff's claim stems from a judgment [in the New Jersey Action] for unpaid invoices." Letter Brief at 2. Defendants allege "Plaintiff has failed to produce a single invoice, bill of sale, or any other sales communication between Plaintiff and GoVideo", insinuating Plaintiff engaged in misconduct by not providing these invoices which subsequently lead to the default judgment. *Id.* However, Plaintiff asserts that the default judgment is not currently in dispute. *Id.* at 4. Anything that occurred before the default judgment was entered in the New Jersey Action indirectly affects the problem currently before the Court and therefore, does not suffice to make the information requested though this interrogatory relevant.

The Court of Appeals, in its review of this case, stated that "the only evidence required to establish the existence of the debt [to GoVideo] would be the default judgment." *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1251 (9th Cir. 2017). In addition, the default judgment was entered against Opta after its attorneys withdrew representation on October 27, 2006 (*Opta*

5

1 *Systems, LLC v. Daewoo Electronics America, Inc., et al.,* Case No. 3:05-cv-05387-JAP (New Jersey Action, Dkt. No. 40), and Opta never retained new counsel, nor did it respond to additional motions filed by Daewoo, including for the default judgment. Ex. A to Compl., Dkt. No. 1. Opta cannot claim now that Daewoo obtained its default judgment with unclean hands when Opta did not respond when given the opportunity in the New Jersey Action.

Defendants additionally claim this interrogatory will assist in establishing their laches defense. Letter Brief at 2. "Laches is an equitable defense that prevents a plaintiff, who 'with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights.'" *Fed. Trade Commn. v. Directv, Inc.*, 2015 WL 9268119, at *2 (N.D. Cal. Dec. 21, 2015). To establish a laches defense, the "defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself." *Id.* Defendants allege that "Daewoo destroyed or lost related records responsive to sales, returns, and other communications between Plaintiff and GoVideo . . . [and that] this is relevant to the Defendants' laches defense." Letter Brief at 2. Moreover, Opta seeks to discover "why, and what documents . . . relating to any sales, returns, or communications between Daewoo and GoVideo were destroyed or lost." Ex. A at 11. Here, requesting why and what sales and communications were destroyed or lost does not aid in establishing that plaintiff delayed its claim for an unreasonable length of time, nor does it show full knowledge of all relevant facts by plaintiff. Thus, the information requested by Opta in this interrogatory is not relevant to this case.

As the information sought in Interrogatory No. 17 is not relevant, the Court finds Plaintiff need not supplement its response to this request.

## II. Interrogatory No. 18

In Interrogatory No. 18, Opta asks Plaintiff to identity "any other person or entity other than Plaintiff who has interest in the outcome of this litigation and [their] interest." Ex. A at 12. Defendants claim this information is relevant to their unclean hands defense. Letter Brief at 2. Defendants argue Plaintiff's original response is insufficient because it "does not state if another person or entity has an interest in the outcome beyond the named parties to the litigation." *Id.* In its response, Plaintiff indicated it is "aware of nothing about the claims and defenses in this case

that implicates the 'financial interest' of any entity other than the parties in the outcome of this case", and that "[only the parties to this action] have a financial interest in the outcome of this litigation." Ex. A at 13. This response is sufficient. Additionally, "to determin[e] whether the doctrine of unclean hands precludes relief requires balancing the alleged wrongdoing of the plaintiff against that of the defendant, and 'weigh[ing] the substance of the right asserted by [the] plaintiff against the transgression which, it is contended, serves to foreclose that right.'" *Northbay Wellness Group, Inc. v. Beyries*, 789 F.3d 956, 960 (9th Cir. 2015) (quoting *Republic Molding Corp. v. B.W. Photo Utils.,* 319 F.2d 347, 350 (9th Cir. 1963).) Here, Defendants have failed to explain the connection between another's interest in the outcome of this litigation and Plaintiff's alleged unclean hands. Defendants only alleged that "Plaintiff's counsel submitted what the District Court in New Jersey found to be a sham affidavit to support Plaintiff's claims in the case against Opta" without explaining how this allegation from a *prior* case is relevant to the case before the Court. Letter Brief at 2.

As the information sought in Interrogatory No. 18 is not relevant, the Court finds Plaintiff need not supplement its response to this request.

### III. Interrogatory No. 19

In Interrogatory No. 19, Opta asks Plaintiff to describe "the factual bases supporting alter ego and success[or] liability, including when and how Plaintiff first knew of [these claims, and to] identity person(s) with knowledge, their location, [and] their knowledge." Ex. A at 13. Defendants contend this information is relevant to their laches defense, as it speaks to when Plaintiff knew enough information to pursue its alter ego and successor liability claims. Letter Brief at 2.

Knowing when Plaintiff was aware of these claims is relevant information that would inform Defendants whether there was unreasonable delay in bringing this action. Plaintiff has stated it is willing to supplement its response (to say that, "no one at Plaintiff knew enough to pursue alter ego and successor liability claims until Plaintiff's counsel conducted a pre-filing investigation for the complaint in this case"). *Id.* at 5. However, Plaintiff argues that the "when and how" aspects of this interrogatory are protected from discovery, stating this information "calls

7

for the mental impressions, analysis, and discussions of counsel, [and therefore] seeks information protected by [] attorney-client privilege and work-product [protection]." Ex. A at 14.

First, attorney-client privilege "protects confidential disclosures made by a client to an attorney in order to obtain legal advice . . . as well as an attorney's advice in response to such disclosures." *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). "Typically, an eight-part test determines whether information is covered by the attorney-client privilege: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id.* "The attorney-client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation." *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). Here, Opta isn't seeking the advice given by the attorney or Plaintiff's disclosures to the attorney that would merit the doctrine of attorney-client privilege, but rather Defendants ask Plaintiff to provide *when Plaintiff* became aware of the potential claims under the theories of alter ego and successor liability. Furthermore, because this information is relevant to Defendants' laches defense, it does not matter when *Plaintiff's counsel* became aware of the potential claims under the theories of alter ego and successor liability, but when *Plaintiff* became aware of them.

Secondly, work-product protection applies only to "documents and tangible things that are prepared in anticipation of litigation." Fed. R. Civ. P. 16(b)(3). What Defendants request are facts: when and how Plaintiff first learned of the bases for its alter ego and successor liability claims. Letter Brief at 3. The request does not reference documents [or] tangible things that would merit work-product protection, but simply asks Plaintiff to provide factual support for its lawsuit, meaning *how Plaintiff* became aware of potential alter ego and successor liability claims. Furthermore, because this information is relevant to Defendants' laches defense, it does not matter when *Plaintiff's counsel* became aware, but when *Plaintiff* became aware. Regardless, the Court of Appeals has held that "opinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is *compelling*." *Holmgren v. State*

8

1 *Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).

In its response to the interrogatory, Plaintiff reasserted its responses to Interrogatories 11 and 12, which requested the "factual and legal bases . . . that [Defendants] are liable for GoVideo's debts under the theor[ies] of alter ego . . . [and] successor liability . . . [and] identify persons, documents, communications from which Daewoo relies." Ex. A at 14-28. Plaintiff's prior responses to those interrogatories do not resolve the issue of when and how Plaintiff first knew of the claims or the identity, knowledge, and whereabouts of anyone with that information. *Id.* at 13. Thus, Plaintiff's response to this interrogatory is insufficient.

Therefore, the Court ORDERS Plaintiff to supplement its response to Opta's Interrogatory No. 19, to inform Defendants *when Plaintiff* knew enough to pursue claims of alter ego and successor liability in its current lawsuit and *how Plaintiff* became aware of potential alter ego and successor liability claims.

## IV. Interrogatory No. 20

In Interrogatory No. 20, Opta asks Plaintiff to describe in detail "any good faith reasons or excuse why Plaintiff delayed bringing the claims in this litigation [and to] identity person(s) with knowledge, their location, [and] their knowledge." Ex. A at 32. Defendants argue this information is relevant to their laches and unclean hands defenses. Letter Brief at 3. However, Plaintiff asserts it "did not 'delay' in 'bringing the claims in this litigation'", and further provides "[t]he claims in this case were brought within the applicable statute of limitation . . . and [] are not barred by res judicata or the entire controversy doctrine." Ex. A. at 33.

When reviewing this case, the Court of Appeals held that, "because the claims in the present action and the guaranty action did not arise from the same transaction or occurrence, New Jersey's version of traditional res judicata does not apply." *Daewoo Elecs. Am. Inc*, 875 F.3d at 1254. The Court of Appeals further stated that "[u]nder New Jersey's traditional res judicata doctrine, a claim asserting breach of a contractual guarantee of a third party's debt does not preclude later alter ego and successor liability claims to collect the debt directly from entities related to the debtor." *Id.* at 1244. While a laches defense requires an element of delay, Plaintiff has sufficiently asserted in its response that it "did not 'delay' in bringing this litigation . . . and

9

1 the case was brought within the applicable statute of limitations." Ex. A. at 33. Therefore, the

2 Court finds Plaintiff need not supplement its response to Interrogatory No. 20.

**V. Interrogatory Nos. 22 and 23**

a. <u>Interrogatory No. 22</u>

In Interrogatory No. 22, Opta asks Plaintiff to describe, "the corporate structure of Plaintiff and any predecessors since 2000, [and to] expla[in] the relationship between Plaintiff and any entity with an ownership interest in Plaintiff and any parent, subsidiary, joint venture, or other entity related." Ex. A at 34. Defendants argue the request is relevant "to demonstrate ordinary corporate practice and conduct that is germane to the defense of Plaintiff's alter ego and successor liability claims." Letter Brief at 3. Plaintiff disagrees, stating "'corporate structure and ownership' is relevant to [Opta's] liability as a successor and alter ego of GoVideo." *Id.* at 6. To resolve this dispute, the Court looked to the Court of Appeals' concisely summarized elements for alter ego and successor liability. First, the alter ego theory under California law "refers to situations where the owner of a corporation will be held liable for the actions of the corporation." *Daewoo Elecs. Am. Inc.*, 875 F.3d at 1249. Proving alter ego liability requires two elements: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist[,] and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Id.* Secondly, regarding successor liability under California law, "a corporation acquiring substantially all the assets of another corporation may be liable for the debts of the terminated corporation where (1) the purchaser expressly or impliedly agrees to such assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape liability for debts." *Id.* at 1250.

The Court agrees that information about Plaintiff's corporate structure is not required to satisfy the elements of alter ego and successor liability. Plaintiff states that "none of the factors listed . . . have anything to do with 'the corporate structure and ownership' of the party bringing a successor liability and alter ego claim." Letter Brief at 6. Moreover, Defendants have failed to establish how Plaintiff's corporate structure is "germane to the defenses of Plaintiff's alter ego and

10

successor liability claims", specifically to the elements of the unclean hands defense and laches defense. *Id.* at 3.

Lastly, Defendants further argue that Plaintiff's response to this request is insufficient because "Plaintiff uses the phrase 'related entities,' rather than actually identify these 'related entities' by name." *Id*. However, Plaintiff states in its response that "it is the legal successor to all of the right, title, and interest of Daewoo Electronics America Inc., and related entities in the debts of and judgments against GoVideo and the Defendants in this and all previous legal actions." Ex. A at 34. Although Defendants seek information "to demonstrate ordinary corporate practice and conduct [of the Plaintiff]", they have failed to explain how this information assists in their defense, specifically, to which defense(s) and to which element(s) of the defense. Letter Brief at 3. Plaintiff has responded appropriately stating that "none of the factors listed . . . have anything to do with 'the corporate structure and ownership' of the party bringing a successor liability and alter ego claim." *Id.* at 6.

Therefore, as the information sought in Interrogatory No. 22 is not relevant, the Court finds Plaintiff need not supplement its response to this request.

b. <u>Interrogatory No. 23</u>

In Interrogatory No. 23, Opta asks Plaintiff to "describe the makeup of any board of directors and officers of Plaintiff and its predecessors since 2000, including names and titles of all board members and officers, [and] whether each board member or officer serve[d] as a board member and/or as an officer of any of the entities." Ex. A at 34. Defendants allege that this request is relevant to demonstrate ordinary corporate practice and conduct that is germane to the defense of Plaintiff's alter ego and successor liability claims. Letter Brief at 3. Plaintiff states this interrogatory "simply has nothing to do with any claim or defense in this case." Ex. A at 35. The Court agrees. As discussed above, the elements to establish both alter ego and successor liability do not require a Plaintiff to identify and describe the makeup of its board of directors or officers, especially over a span of 18 years. As the information sought in Interrogatory No. 23 is not relevant, the Court finds Plaintiff need not supplement its response to this request.

///

## VI. Interrogatory Nos. 28-37

In the Letter Brief, the parties did not provide Interrogatory Nos. 28-37 or Plaintiff's responses to them, though both parties articulated their positions regarding supplementing responses. Since the actual requests and responses were not provided to the Court, the Court cannot make an informed ruling on these requests. Therefore, the Court ORDERS the parties to submit to the Court Defendant's Interrogatory Nos. 26-37 and Plaintiff's responses to those interrogatories.

## CONCLUSION

The Court **ORDERS** as follows:

A. As the information sought in Interrogatory No. 17 is not relevant, the Court finds Plaintiff need not supplement its response to this request.

B. As the information sought in Interrogatory No. 18 is not relevant, the Court finds Plaintiff need not supplement its response to this request.

C. Plaintiff shall supplement its response to Opta's Interrogatory No. 19, to inform Defendants *when Plaintiff* knew enough to pursue claims of alter ego and successor liability in its current lawsuit and *how Plaintiff* became aware of potential alter ego and successor liability claims.

D. The Court finds Plaintiff need not supplement its response to Interrogatory No. 20.

E. As the information sought in Interrogatory No. 22 is not relevant, the Court finds Plaintiff need not supplement its response to this request.

F. As the information sought in Interrogatory No. 23 is not relevant, the Court finds Plaintiff need not supplement its response to this request.

///

G. The parties shall submit to the Court Interrogatory Nos. 26-37 and Plaintiff's responses to those interrogatories.

**IT IS SO ORDERED.**

Dated: August 16, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge